BENJAMIN HUMMER, PLAINTIFF AND APPELLEE, v. LEHIGH VALLEY RAILROAD COMPANY, DEFENDANT AND APPELLANT.

Submitted June 18, 1906—Decided November 12, 1906.

1. The plaintiff was driving on a dark night in a milk wagon on a highway which crossed the railroad track of the defendant at an acute angle. There were no lights, and he was unable to see the crossing until he reached it. When he reached the crossing the forward wheel of his wagon went off the planking, dropped between the rails and was caught. After endeavoring, without success, to extricate his horse, he undertook to unload the wagon so as to enable the horse to pull it out. While unloading, he saw a train approaching, and immediately took his lantern and ran down the track and swung his lantern across the track for the purpose of warning the approaching train. Notwithstanding the signal, the train struck and destroyed plaintiff's wagon. The evidence left it open to dispute whether the trainmen stopped the train with reasonable promptness after being warned. *Held*, that the questions of the negligence of the defendant and of the contributory negligence of the plaintiff were for the jury.

2. On motions to nonsuit and to direct a verdict, where fair-minded men might honestly differ as to the conclusions to be drawn from the facts, whether controverted or uncontroverted, the question at issue should go to the jury.

On appeal from the First District Court of Jersey City.

Before Justices HENDRICKSON, PITNEY and TRENCHARD.

For the plaintiff, *Elmer W. Demarest.*

For the defendant, *Collins & Corbin.*

The opinion of the court was delivered by

TRENCHARD, J.   This is an appeal from a judgment of the First District Court of Jersey City.

The action was brought by the plaintiff to recover damages for the destruction of his wagon by a train of the defendant company at a crossing on Linden avenue, in Jersey City.

It appears from the evidence that on November 7th, 1905,

about three o'clock in the morning, the plaintiff was driving in a milk wagon on Linden avenue, which crossed the railroad track of the defendant company at grade, and at an acute angle. It was a dark night and there were no lights and he was unable to see the railroad crossing until he reached it. When he reached the crossing the forward wheel of his wagon went off the planking, dropped between the rails and was caught. After endeavoring, without success, to extricate the horse, the plaintiff undertook to unload the wagon so as to enable the horse to pull it out. While unloading the wagon he saw a train approaching, and immediately took his lantern and ran down the track and swung his lantern across the track as a signal to the approaching train. Notwithstanding the signal, the train struck and destroyed the wagon of the plaintiff. The jury found a verdict in favor of the plaintiff, assessing the damages at $100.

On behalf of the defendant, it is insisted that the plaintiff should have been nonsuited or a verdict against him should have been directed, because there was no evidence of negligence on the part of the defendant, and because the plaintiff was guilty of negligence.

Was the defendant company negligent?

Under the theory upon which the case was submitted to the jury, the verdict necessarily rests solely on the alleged negligence of the engineer in not stopping the train as soon as he reasonably might have stopped it after being warned.

We must now review the case according to the theory on which it was submitted to the jury.

The plaintiff testified that he ran down the track about four car lengths from the crossing and swung his lantern in front of the train, but that the speed of the train did not slacken until after it had passed him; that he heard the air-brakes applied after the train had passed him. The engineer of the defendant's train testified that the first he knew there was anything wrong was when he saw the wagon; that previous to that he saw a man with a lantern waving it on the crossing; that he then applied the air-brakes and shut off steam. On cross-examination, however, he testified as follows:

"*Q.* You said that the fireman called your attention to the man waving the lantern?

"*A.* He didn't call my attention to the man waving the lantern—he called my attention to see what the man wanted.

"*Q.* This was before you came around the curve?

"*A.* About at the beginning of the curve.

"*Q.* And when you looked, you saw the man waving the lantern?

"*A.* After I came around the curve I saw the man waving this lantern—or he was not waving it; he was just crossing it.

"*Q.* Crossing the track?

"*A.* No, he stood on the track.

"*Q.* Swinging the lantern?

"*A.* He was not swinging it; he was just holding the lantern up in this manner (indicating with motions).

"*Q.* And you say that you were going at about twenty-five miles an hour at that time?

"*A.* Yes, sir; when the fireman called my attention to him.

"*Q.* And that was four or five cars away from the crossing?

"*A.* Four or five cars from the crossing to the curve.

"*Q.* You say that you shut off the steam and put on the air-brake right away?

"*A.* I didn't say that.

"*Q.* Did you apply the air-brake?

"*A.* I said I shut off the steam and applied the brake."

It will be seen, therefore, that the evidence left it open to dispute whether the trainmen stopped the train with reasonable promptness after receiving warning of the peril of the plaintiff. The circumstance that the lantern used by the plaintiff as a signal of warning showed a white light rather than a red light is of no controlling significance. He used the only means of signal at hand, and that it was seen and its significance appreciated is shown by the testimony of the engineer and the fireman of the defendant company.

Was the plaintiff guilty of contributory negligence?

It is contended that the plaintiff was at fault in driving off the planking. In connection with this, it is to be ob-

served that the testimony shows that the plaintiff was not especially familiar with the crossing; that there were no lights there; that plaintiff was approaching the crossing on a dark and cloudy night and was unable to see it until he reached it, and that the railroad crossed the avenue at an acute angle.

It is also contended that the plaintiff was at fault in not sooner giving notice to the train crew as to the position of his wagon. In connection with this it is to be observed that the evidence shows that the railroad appears to have been a single-track road and that there was nothing to show that the plaintiff knew from which direction a train might come. He could not guard the track in both directions, and could not well make a signal by waving a lantern while he was engaged in unloading the wagon. Whether it was not more prudent to hurry the unloading, so as to quickly extricate his team, rather than to abandon the unloading in order to signal any train that might be expected, but was not known to be approaching, was a matter of doubtful inference for the jury's determination.

The rule which controlled the action of the trial judge on the motions to nonsuit and to direct a verdict was this: that where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury. *Pennsylvania Railroad Co.* v. *Matthews,* 7 *Vroom* 531; *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton,* 26 *Id.* 342; *Newark Passenger Railway Co.* v. *Block, Id.* 605; *Traction Company* v. *Scott,* 29 *Id.* 682.

Applying the rule stated, a jury question was raised, both as to the negligence of the defendant company and as to the contributory negligence of the plaintiff, and both questions were properly submitted to the jury.

The result is that the judgment below should be affirmed.